UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JANICE HARRINGTON,

            Plaintiff,

     -v-                    5:23-CV-1468

CROUSE HOSPITAL and
BYUOUNG RYU, M.D.,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

HARDING MAZZOTTI, LLP                       KELLY A. MAGNUSON, ESQ.
Attorneys for Plaintiff
1 Wall Street
Albany, NY 12212-5141

GALE GALE & HUNT, LLC                       KATHERINE A. BUCKLEY, ESQ.
Attorneys for Crouse Hospital
P.O. Box 97
Fayetteville, NY 130669-0097

MARTIN GANOTIS BROWN                        CHARLES E. PATTON, ESQ.
   MOULD & CURRIE, P.C.                    GABRIELLE L. BULL, ESQ.
Attorneys for Byoung Ryu, M.D.
5788 Widewaters Parkway
Dewitt, NY 13214

DAVID N. HURD[1]
United States District Judge

---

[1] This case was originally assigned to Senior U.S. District Judge Thomas J. McAvoy. The case has since been reassigned to U.S. District Judge David N. Hurd.

**DECISION and ORDER**

**I. INTRODUCTION**

On February 10, 2006, plaintiff Janice Harrington ("Harrington" or "plaintiff") went into labor at Crouse Hospital ("Crouse") in Syracuse, New York. Dkt. No. 1. Plaintiff gave birth to a healthy baby girl. *Id.* But the birth did not go as planned. *Id.*

Harrington wanted an unmedicated and unassisted birth. Dkt. No. 1. Instead, plaintiff was given an episiotomy.[2] *Id.* According to plaintiff, she received the procedure without her knowledge or consent. *Id.* In the years that followed, plaintiff suffered complications from the episiotomy until she underwent corrective colorectal surgery in late 2019. *Id.*

On November 23, 2023, more than sixteen years later, Harrington filed this diversity action against Crouse and her treating physician, Byoung Ryu, M.D. ("Dr. Ryu") (collectively "defendants").[3] Dkt. No. 1. Plaintiff brings her lawsuit pursuant to New York Civil Practice Law and Rules ("CPLR") § 214-J (the "Adult Survivor's Act" or the "Act"). *Id.*

---

[2] Neither party has offered a definition of "episiotomy." For the reader's convenience, the generally accepted definition of an episiotomy is an incision through the perineum, or, the tissue located between the vaginal opening and the anus. *See What is an episiotomy?* JOHNS HOPKINS MEDICINE https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/episiotomy (last visited Sept. 18, 2024).

[3] Harrington is domiciled in Massachusetts. Dkt. No. 1. Defendants are domiciled in New York. *Id.*

Harrington's three-count complaint asserts claims for sexual assault, battery, and intentional infliction of emotional distress ("IIED"). Dkt. No. 1. Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. Nos. 7, 9. The motions have been fully briefed, Dkt. Nos. 17–20, and will be considered on the basis of the submissions and without oral argument.

## II. BACKGROUND

Harrington became pregnant in 2005. Compl. ¶ 7. From the start of her pregnancy, plaintiff educated herself about the different methods and procedures used during delivery. *Id.* ¶ 8. In addition to doing her own research, plaintiff had also been exposed to Obstetrics/Gynecology ("OB/GYN") resident physician's ("resident(s)") discussions on these methods and procedures. *Id.* As a result, plaintiff was certain about the type of birth she wanted: a "natural" i.e., an *unmedicated* and *unassisted* birth. *Id.*

Harrington was exposed to OB/GYN residents because her then-husband and her child's father, Christopher Medina, M.D. ("Medina"), was an OB/GYN resident at Crouse from 2004 to 2008. *Id.* ¶ 6. Early in plaintiff's pregnancy, Medina insisted that plaintiff leave her current OB/GYN and become a patient of Dr. Ryu—Medina's supervising physician and an instructor in the residency program. *Id.* ¶ 9.

But Harrington wanted a midwife to deliver her baby. Compl. ¶ 10. This was a preference that plaintiff's existing OB/GYN could honor because the practice used midwives for their patient's deliveries. *Id.* Plaintiff was also uncomfortable delivering with Dr. Ryu at Crouse because her husband worked there, and plaintiff knew many of the hospital staff. *Id.* ¶¶ 12–13.

Medina did not respect his wife's concerns. Compl. ¶ 14. Instead, Medina told Harrington that he was worried for the baby's health if Dr. Ryu did not deliver it. *Id.* ¶¶ 15–16. Medina also pressed that it would be unlikely that he could be present for the birth if the baby were born outside Crouse Hospital. *Id.* Plaintiff eventually relented, left her OB/GYN, and became a patient of Dr. Ryu. *Id.* ¶ 17.

When Harrington met with Dr. Ryu for a prenatal appointment, she discussed her birth plan and her concerns for delivery. Compl. ¶ 21. As relevant here, plaintiff told Dr. Ryu that she did not want to have an episiotomy. *Id.* Plaintiff explained that she did not believe it was a necessary procedure and that she was concerned that an episiotomy would lead to complications. *Id.* Dr. Ryu, brushed off plaintiff's concerns and explained that, "sometimes they're necessary." *Id.*

Harrington relayed her concerns to Medina, who assured her that he would not permit Dr. Ryu to do anything she did not want during her delivery. Compl. ¶ 22. But when plaintiff spoke with other female residents,

they warned plaintiff that Dr. Ryu "'always'" performed episiotomies and to switch doctors if she did not want it done. *Id.* ¶ 23. Medina informed plaintiff that it was too late in her pregnancy to switch doctors. *Id.* ¶ 24. Medina promised plaintiff that he would not allow Dr. Ryu to perform the procedure. *Id.*

On February 10, 2006, Harrington went into labor. Compl. ¶ 25. Despite her previous conversations with both Medina and Dr. Ryu, plaintiff's birth plan was quickly disregarded. *Id.* ¶ 27.

First, Harrington was forced to give birth while lying on her back. Compl. ¶ 27. She was upset with this arrangement because "she felt much better laboring either on all four or standing facing the hospital bed and leaning against it." *Id.* After about an hour of labor, Dr. Ryu suddenly instructed plaintiff to stop and "hold still[.]" *Id.* ¶ 28. But Dr. Ryu did not tell plaintiff why he had instructed her to stop or what the next course of treatment would be. *Id.* Instead, and without obtaining plaintiff's informed consent, Dr. Ryu began to perform an episiotomy. *Id.* ¶ 29. Medina, who was in the room, observed Dr. Ryu perform the procedure—aware that doing so went against plaintiff's express wishes. *Id.* ¶ 30.

Dr. Ryu then told Harrington to keep pushing until the baby was born. Compl. ¶ 31. After plaintiff had finished laboring, it was observed that her episiotomy incision had extended to a "significant tear." *Id.* ¶ 32. In

plaintiff's medical record,[4] Dr. Ryu noted the tear as "a 'third degree extension of episiotomy.'" *Id.* ¶ 32.

Nevertheless, Dr. Ryu stitched up the tear while she was in the delivery room. Compl. ¶ 34. No one ordered plaintiff a colorectal consultation, nor did Dr. Ryu explain to plaintiff "much of anything that had happened" during the birth. *Id.*

Plaintiff suffered continual health problems for more than ten years after Dr. Ryu performed the episiotomy. Compl. ¶¶ 35–66. Plaintiff has undergone additional colorectal surgeries that have left her with a colostomy, severe pain, and distress. *Id.*

In 2022, the Governor of the State of New York signed the Adult Survivors Act into law. The Act effectively extended the statute of limitations for civil actions for certain kinds of sexual offenses. The Act gave potential plaintiffs one year from the law's enactment to file suit. Plaintiff's lawsuit followed.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must

---

[4] Medina, Harrington's then-husband, was listed as the "resident physician" on Harrington's medical records. Compl. ¶ 34.

be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. <u>DISCUSSION</u>

Defendants have each moved to dismiss Harrington's complaint. Dr. Ryu's Mot. to Dismiss, Dkt. No. 7; Crouse's Mot. to Dismiss, Dkt. No. 9.

### A. <u>Dr. Ryu's Motion to Dismiss</u>

Dr. Ryu argues that Harrington's complaint should be dismissed in its entirety. Dr. Ryu contends that plaintiff's decades-old tort claims are obviously untimely. According to him, they were not revived under the Adult Survivors Act because plaintiff has not stated a claim for a sexual offense as required by the Act. Dr. Ryu's Mem., Dkt. No. 7-3 at 4–9.

Dr. Ryu's principal contention is that Harrington's claims are untimely and must be dismissed. Dr. Ryu's Mem. at 4–9. Plaintiff has asserted three

claims against Dr. Ryu: (1) sexual assault; (2) battery; and (3) IIED.  These are intentional torts.  In New York, the statute of limitations for intentional tort claims is one year.  *Arnold v. Town of Camillus*, 662 F. Supp. 3d 245, 269 (N.D.N.Y. 2023) (D'Agostino, J.) (citing *Trayvilla v. Japan Airlines*, 111 N.Y.S.2d 224, 225 (N.Y. App. Div. 2019)); *Yong Wen Mo v. Gee Ming Chan*, 792 N.Y.S.2d 589, 590 (N.Y. App. Div. 2005).  Because the one-year statute of limitations expired over ten years ago, plaintiff could not, therefore, satisfy the statute of limitations on any of these claims without some exception.

Harrington points to the Adult Survivors Act.  Under the Act, "persons who allegedly were abused sexually as adults were given a new one-year period within which to sue their alleged abusers."  *Carroll v. Trump*, 650 F. Supp. 3d 213, 215 (S.D.N.Y. 2023).  But the Act did not revive all state-law tort claims of all alleged victims.  Instead, the Act operates to revive causes of action related to conduct proscribed by § 130 of the New York Penal Law.

Harrington argues that the Adult Survivors Act is "far broader than the [d]efendants wish to convince the [C]ourt."  Pl.'s Opp'n to Dr. Ryu's Mot. to Dismiss, Dkt. No. 17 at 8; Pl.'s Opp'n to Crouse's Mot. to Dismiss, Dkt. No. 18 at 9.  According to plaintiff, courts that have analyzed a nearly identical statute, the Child Victims Act (the "CVA"), have determined that the appropriate revival test is whether the civil claim *arises* from sexual misconduct criminalized under § 130.  Pl.'s Opp'n to Dr. Ryu's Mot. to

Dismiss at 9; Pl.'s Opp'n to Crouse's Mot. to Dismiss at 10.  Such was the conclusion of a New York trial court.  *J.S.M. v. City of Albany Dep't of Gen. Servs.*, 211 N.Y.S.3d 859, 868 (N.Y. Sup. Ct. 2024).  In *J.S.M.*, the trial court concluded that the Adult Survivors Act "will apply to a broader set of causes of action than the assault itself, including negligent supervision and hostile work environment, provided the ultimate injury was the result of a sexual offense."

But even accepting that the Act revives Harrington's battery and IIED claims, she must still plausibly allege facts amounting to a sexual offense under the Penal Law.

To that end, Harrington alleges that her claims for sexual assault and battery constitute violations of §§ 130.52 (forcible touching), 130.65(a) (aggravated sexual abuse in the fourth degree), 130.66 (aggravated sexual abuse in the third degree), 130.67 (aggravated sexual abuse in the second degree), and 130.70 (aggravated sexual abuse in the first degree).[5]

The Court will address the relevant sections in turn.

### 1. **New York Penal Law § 130.52**

New York Penal Law § 130.52 provides in relevant part:

---

[5] In her complaint, Harrington alleges that Dr. Ryu's conduct constitutes violations of §§ 130.05, 130.52, 130.55, 130.60, 130.65, 130.65(a), 130.66, 130.67, 130.70, and 130.85. Compl. ¶ 68.  In her opposition papers, plaintiff narrows this list to just §§ 130.52, 130.62(a), 130.66, 130.67, and 130.70. Pl.'s Opp'n to Dr. Ryu's Mot. to Dismiss at 6.

> A person is guilty of forcible touching when such person intentionally, and for no legitimate purpose:
>
> 1. forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire;
>
> . . .
>
> For the purposes of this section, forcible touching includes squeezing, grabbing or pinching.

N.Y. PENAL LAW § 130.52. The New York Court of Appeals has stated that the *mens rea* element of § 130.52 may be . . . inferred from conduct as well as the surrounding circumstances" including "the act itself[.]" *People v. Hatton*, 26 N.Y.3d 364, 370 (N.Y. 2015). In *Hatton*, the Court of Appeals concluded that such an inference was proper due to the complainant's lack of consent and the "intimate nature of the act" in question. *Id.*

Harrington alleges, in conclusory terms, that she did not give her informed consent to Dr. Ryu prior to receiving an episiotomy. Compl. ¶¶ 28–29. But she has not alleged sufficient facts that would permit the inference that Dr. Ryu performed the episiotomy for the purpose of gratifying his sexual desires. On the contrary, plaintiff alleges that when she raised her concern over the procedure to Dr. Ryu, he stated that "sometimes they're necessary" for medical reasons. *Id.* ¶ 21.

- 10 -

Indeed, even reading the entirety of the complaint in a light most favorable to Harrington, she has not plausibly alleged that Dr. Ryu performed an episiotomy on her because he somehow wanted to cause her embarrassment, make her feel less valuable, or injure her. Plaintiff simply contends that Dr. Ryu performed the procedure when she did not want him to. That might be actionable as malpractice, but it does not constitute a plausible allegation of intent to abuse or degrade. Accordingly, plaintiff has not alleged forcible touching withing the meaning of § 130.52.

### 2. **New York Penal Law §§ 130.65(a), 130.66, 130.67, 130.70**

Harrington also asserts that Dr. Ryu's conduct would constitute a violation of §§ 130.65(a), 130.66, 130.67, 130.70  However, a plain reading of each of these sections of the Penal Law reveals a common *actus reus* requirement: that the defendant inserts a "foreign object" or "finger" in the "vagina, urethra, penis, rectum or anus of another person[.]" N.Y. PENAL LAW §§ 130.65-a, 130.66, 130.67, 130.70.[6]

Upon review, Harrington has not plausibly alleged that Dr. Ryu's conduct fits the statutory requirement. As noted *supra*, performing an episiotomy requires the physician to make an incision through the area between the patient's vaginal opening and anus, or the perineum. Plaintiff does not allege

---

[6] The Court notes the distinctions between New York Penal Law §§ 130.65-a, 130.66 that prohibit inserting foreign objects or "a finger" into the "vagina, urethra, penis, rectum, or anus of another person" and §§ 130.67, 130.70 that prohibit only inserting a foreign object into the same.

that Dr. Ryu inserted either his fingers or any foreign objects into her vagina, urethra, rectum, or anus when he performed the episiotomy.

Therefore, plaintiff has not plausibly alleged that Dr. Ryu violated any of the above-referenced portions of the Penal Law.

### 3. **Timeliness of Harrington's Claims**

In sum, Harrington has not plausibly alleged facts giving rise to "sexual acts" criminalized under § 130 of the New York Penal Law.  Therefore, plaintiff's claims are not revived by the Adult Survivors Act and are untimely in accordance with the applicable statutes of limitation.  *Supra.*  Accordingly, Dr. Ryu's motion to dismiss will be granted.

### B.  **Crouse's Motion to Dismiss**

Crouse has also moved to dismiss Harrington's complaint in its entirety. Crouse argues that plaintiff has she sufficiently pled a theory of vicarious liability for Dr. Ryu's conduct.[7]  Crouse's Mem., Dkt. No. 9-2 at 4–8.

"[U]nder the doctrine of vicarious liability, liability for another person's wrongdoing is imputed to the defendant[.]" *Bennett v. State Farm Fire & Cas. Co.*, 198 A.D.3d 857 (N.Y. App. Div. 2021) (citations omitted).  Thus, "an employer cannot be held vicariously liable for the acts of an employee if there has been a determination, on the merits, that the employee is not liable for

---

[7] Crouse also argues that plaintiff's tort claims have not been revived by the Adult Survivors Act.  Crouse's Mem. at 5–9.  However, for the reasons stated *supra* the Court need not reach this argument.

those acts." *Shenoy v. Kaleida Health*, 79 N.Y.S.3d 810, 811 (N.Y. App. Div. 2018) (cleaned up).

As discussed *supra*, Harrington's claims against Dr. Ryu are untimely and must be dismissed. Therefore, plaintiff's derivative claims against Crouse under a theory of vicarious liability fail as a matter of law. Accordingly, Crouse's motion to dismiss will be granted.

## V. **CONCLUSION**

Harrington has not plausibly alleged facts to support an inference that Dr. Ryu engaged in any conduct prohibited by § 130 of the New York Penal Law. Accordingly, plaintiff cannot benefit from the Adult Survivors Act to revive these otherwise untimely claims. The Court is sympathetic to the ongoing medical pain and anguish caused by Dr. Ryu's alleged disregard of her wishes during her labor. But plaintiff's chosen legal remedies for that alleged conduct are barred by the applicable statutes of limitation.

Therefore, it is

ORDERED that

1. Dr. Ryu's motion to dismiss is GRANTED; and

2. Crouse's motion to dismiss is GRANTED; and

3. Plaintiff's complaint is DISMISSED.

IT IS SO ORDERED.

_____
David N. Hurd
U.S. District Judge

Dated: October 10, 2024
       Utica, New York.